RUTH ELIN AUERBACH, SBN 104191
Attorney at Law
711 Van Ness Avenue, Suite 440
San Francisco, CA 94102
Tel: (415) 673-0560
Fax: (415) 673-0562

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| In re: | ) | Case No.: 10-70345 |
| | ) | |
| EAST BAY ASSOCIATES, LLC, | ) | CHAPTER 11 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

DEBTOR'S DISCLOSURE STATEMENT
DATED MARCH 15, 2011

I.  **INTRODUCTION**

This is the disclosure statement (the "Disclosure Statement") in chapter 11 case of EAST BAY ASSOCIATES ("The Debtor"). This Disclosure Statement contains information about the Debtor and describes the Debtor's Plan of Reorganization Dated March 15, 2011, (the "Plan") filed by the Debtor on March 15, 2011. A full copy of the Plan is attached to this Disclosure Statement as Exhibit A. *Your rights may be affected. You should read the Plan and this Disclosure Statement carefully and discuss them with your attorney. If you do not have an attorney, you may wish to consult one.* The proposed distributions under the Plan are discussed at pages 6-10 of this Disclosure Statement. General unsecured creditors are classified in Class 3, and will receive a

Debtor's Disclosure Statement
Dated

Case: 10-70345    Doc# 73    Filed: 03/15/11    Entered: 03/15/11 19:53:36    Page 1 of 17 - 1

distribution of 100 % of their allowed claims, within 60 months of the Effective Date of the Plan.

### A. Purpose of the Disclosure Statement

This Disclosure Statement describes:

- The Debtor and significant events during the bankruptcy case,
- How the Plan proposes to treat claims or equity interests of the type you hold (*i.e.*, what you will receive on your claim or equity interest if the plan is confirmed),
- Who can vote on or object to the Plan,
- What factors the Bankruptcy Court (the "Court") will consider when deciding whether to confirm the Plan,
- Why [the Proponent] believes the Plan is feasible, and how the treatment of your claim or equity interest under the Plan compares to what you would receive on your claim or equity interest in liquidation, and
- The effect of confirmation of the Plan.

Be sure to read the Plan as well as the Disclosure Statement. This Disclosure Statement describes the Plan, but it is the Plan itself that will, if confirmed, establish your rights.

### B. Deadlines for Voting and Objecting; Date of Plan Confirmation Hearing

The Court has not yet confirmed the Plan described in this Disclosure Statement. This section describes the procedures pursuant to which the Plan will or will not be confirmed.

1. *Time and Place of the Hearing Confirm the Plan*

The hearing at which the Court will determine whether to confirm the Plan will take place on _____, 2011, at _____ _.M., in Courtroom 201, at the United States Bankruptcy Court, 1300 Clay Street, 2nd Floor, Oakland, California.

Debtor's Disclosure Statement
Dated
Case: 10-70345   Doc# 73   Filed: 03/15/11   Entered: 03/15/11 19:53:36   Page 2 of 17  - 2 -

2.   *Deadline For Voting to Accept or Reject the Plan*

If you are entitled to vote to accept or reject the plan, vote on the enclosed ballot and return the ballot by mail, facsimile or e-mail transmission, to Ruth Elin Auerbach, 711 Van Ness Ave., Suite 440, San Francisco, CA 94102, facsimile (415) 673-0562; e-mail: attorneyruth@sbcglobal.net, so that it is received at least seven (7) days prior to the date set for the hearing on Confirmation of the Debtor's Plan..  See section IV.A. below for a discussion of voting eligibility requirements.

Your ballot must be received by _____ or it will not be counted.

3.   *Deadline For Objecting to the Confirmation of the Plan*

Objections to confirmation of the Plan must be filed with the Court and served upon the Debtor's Counsel and the Office of the U.S. Trustee by _____.

4.   *Identity of Person to Contact for More Information About the Plan*

If you want additional information about the Plan, you should contact:

Ruth Auerbach, 711 Van Ness Ave., Suite 440, San Francisco, CA 94102, phone: (415) 673-0560; e-mail:  attorneyruth@sbcglobal.net

**C.  Disclaimer**

*The Court has] approved this Disclosure Statement as containing adequate information to enable parties affected by the Plan to make an informed judgment about its terms.  The Court has not yet determined whether the Plan meets the legal requirements for confirmation, and the fact that the Court has approved this Disclosure Statement does not constitute an endorsement of the Plan by the Court, or a recommendation that it be accepted.*

II.  **BACKGROUND**

A.   **Description and History of the Debtor's Business**

The Debtor is a Limited Liability Company.   Since 1999, the Debtor has been in the business of land development.  The Debtor is the owner of two contiguous parcels of real property located in Byron, California.  The property is the former location of Byron Hot Springs (BHS), a well known resort from the 1880's until World War II, when it

became "Camp Tracy", a U.S. Army interrogation center for German and Japanese prisoners of war. After WWII, the Greek Orthodox Church purchased the property and hot springs. In the 1950's Contra Costa County purchased the property with the intent to restore the resort and turn it into a Polio Treatment center. It was never completed. After several other owners over the years, East Bay Associates acquired the property in 1989 with the intent to restore the spa to its former glory. It has spent the last 10+ years attempting to acquire from Contra Costa County the necessary permits, plans and financing for the project. When the economy and the real estate market fell in 2006, the sources of financing dried up, and the debtor was unable to refinance the loans against the property when they matured. This led to the filing of this Chapter 11 case. Prior to the commencement of this case, the Debtor sold fill material from the resort, which was used for cosmetic purposes, in order to try to make payments to the lender. Since the case was filed, the Debtor has been exploring other business activities for the property which would allow the Debtor to obtain income while the Debtor continues to look for financing for the restoration of BHS resort. In 2008, the Debtor had entered into a master lease agreement with Delterra Leasing Corp., who was to be responsible for the business operations at the Property and would pay to the debtor monthly rent. Under this Plan, the Debtor intends to assume this Master Lease. The Debtor will borrow $4,000,000 in return for a first priority deed on the Debtor's property, which will provide initial funding to pay off the claim of ACM, and pay down the claim of CCIF, while the Debtor together with Delterra will continue to pursue the restoration of the resort as well as to establish an aquaculture business for endangered species, establish mineral production sites, and continue preparations for the restoration of the Byron Hot Springs Resort.

**B. Insiders of the Debtor**

David T. Fowler is the managing member of the Debtor. Other members are Robert A. Milano and Rodney Booth.

**C. Management of the Debtor Before and During the Bankruptcy**

During the two years prior to the date on which the bankruptcy petition was filed, David Fowler was the sole managing member of the Debtor. He has continued as such during the pendency of the Chapter 11 case and will continue to manage the Debtor post-confirmation.

### D. Events Leading to Chapter 11 Filing

Several factors led to the filing of this Chapter 11 case, including the delays in issuance of permits for restoration work, plus the collapse of the real estate market in general, and particularly in Contra Costa County. With the collapse of the economy, it became impossible to obtain financing and the Debtor was unable to make the balloon payments to its secured lenders. The Debtor was unable to negotiate with Coast Capital because they ceased business operations. Their successor in interest began foreclosure proceedings.

### E. Significant Events During the Bankruptcy Case

- There have been no asset sales, financing orders or cash collateral issues since the filing of this case. The secured creditors have filed Motions for Relief from Stay which are trailing the confirmation process.
- David Fowler has been appointed the Responsible Individual for the Debtor; Ruth Auerbach has been appointed Debtor's counsel.
- The Debtor, with the assistance of Delterra Leasing Corp., has activated alternative enterprises at the Property pending full renovation and development of the resort, including aquaculture and mineral processing activities to produce income pending development. The Debtor has identified and is pursuing a number of funding sources, including joint ventures, investors and lenders. The Debtor will have completed arrangements for the enterprise(s) in which it will engage prior to the hearing on approval of this Disclosure Statement.

### F. Projected Recovery of Avoidable Transfers

The Debtor does not believe there are any, nor does it intend to pursue any preference, fraudulent conveyance or other avoidance actions.

### G. Claims Objections

The Debtor has reviewed the claims filed in this case. It appears that the claim of Coast Capital includes certain default-type penalty payments, which the debtor believes can be excluded from payment under its Plan. If the Debtor is unable to resolve the issues voluntarily with CCIF, then the Debtor may have no alternative but to object to the proof of claim and seek court determination as to the allowable amount of the claim. The Debtor does not anticipate any other claims objections, based on currently filed claims, but reserves the right to object to claims if the Debtor deems it appropriate.

### H. Current and Historical Financial Condition

The identity and fair market value of the estate's assets are listed in Exhibit B. The value of the real property is based upon an operating enterprise, as set forth in the Debtor's appraisal obtained in July 2010. Coast Capital has obtained its own appraisal in which the property is valued at $2,000,000. The Debtor believes the appraiser failed to take into account the historical prominence, and agricultural and mineral resources of the property, as well as other criteria which would make the property considerably more valuable even in its current state. A valuation hearing has been scheduled for April 18, 2011, unless the parties are able to reach an agreement as to value for purposes of the Plan and this Disclosure Statement.

The Debtor's most recent post-petition operating report is attached hereto as Exhibit C.

## III. SUMMARY OF THE PLAN AND TREATMENT OF CLAIM AND EQUITY INTERESTS

### A. Purpose of the Plan of Reorganization

As required by the Code, the Plan places claims and equity interests in various classes and describes the treatment each class will receive. The Plan also states whether

each class of claims or equity interests is impaired or unimpaired.  If the Plan is confirmed, your recovery will be limited to the amount provided by the Plan.

B. **Unclassified Claims**

Certain types of claims are automatically entitled to specific treatment under the Code.  They are not considered impaired, and holders of such claims do not vote on the Plan.  They may, however, object if, in their view, their treatment under the Plan does not comply with that required by the Code.  As such, the Plan Proponent has *not* placed the following claims in any class:

1. *Administrative Expenses*

Administrative expenses are costs or expenses of administering the Debtor's chapter 11 case which are allowed under § 507(a)(2) of the Code.  Administrative expenses also include the value of any goods sold to the Debtor in the ordinary course of business and received within 20 days before the date of the bankruptcy petition.  The Code requires that all administrative expenses be paid on the effective date of the Plan, unless a particular claimant agrees to a different treatment.

The following chart lists the Debtor's estimated administrative expenses, and their proposed treatment under the Plan:

| **Type** | **Estimated Amount Owed** | **Proposed Treatment** |
| --- | --- | --- |
| Expenses Arising in the Ordinary Course of Business After the Petition Date | n/a | Paid in full on the effective date of the Plan, or according to terms of obligation if later |
| The Value of Goods Received in the Ordinary Course of Business Within 20 Days Before the Petition Date | n/a | Paid in full on the effective date of the Plan, or according to terms of obligation if later |

Debtor's Disclosure Statement
Dated:

| | | |
|---|---|---|
| Professional Fees, as approved by the Court. | $40,000 | Paid in full on the effective date of the Plan, or according to separate written agreement, or according to court order if such fees have not been approved by the Court on the effective date of the Plan |
| Other administrative expenses | n/a | Paid in full on the effective date of the Plan or according to separate written agreement |
| Office of the U.S. Trustee Fees | none | Paid in full on the effective date of the Plan |
| TOTAL | $40,000 | |

### 2. Priority Tax Claims

Priority tax claims are unsecured income, employment and other taxes described by §507(a)(8) of the Code. Unless the holder of such a priority tax claim agrees otherwise, it must receive the present value of such claim, in regular installments, paid over a period not exceeding five years from the order of relief.

The Debtor believes it has no unsecured priority tax claims.

### C. Classes of Claims and Equity Interests

The following are the classes set forth in the Plan, and the proposed treatment that they will receive under the Plan:

### 1. Classes of Secured Claims

Allowed Secured Claims are claims secured by property of the Debtor's bankruptcy estate (or that are subject to setoff) to the extent allowed as secured claims under §506 of the Bankruptcy Code. If the value of the collateral or setoffs securing the creditor's claim is less than the amount of the creditor's allowed claim, the deficiency will be classified as a general unsecured claim.

The following chart lists all classes containing the Debtor's secured pre-petition claims and their proposed treatment under the Plan.

| Class | Impairment | Treatment |
|---|---|---|
| Class 2a – Secured Claim of ACM INVESTORS | unimpaired | This claim will be paid in full on the Effective Date. |
| Class 2b – Coast Capital Second Priority Claim | Impaired | This Claim will be paid as follows: $1,000,000 on the Effective Date. Thereafter, interest payments in the sum of $30,000/month for 60 months. The balance will be paid in full at the end of 60 months from the Effective Date. |

2. *Classes of Priority Unsecured Claims*

Certain priority claims that are ferred to in §§507(a)(1), (4),(5),(6) and (7) of the Code are required to be placed in classes. The Code requires that each holder of such a claim receive cash on the effective date of the Plan equal to the allowed amount of such claim. However, a class of holders of such claims may vote to accept different treatment.

The Debtor has no priority unsecured claims.

3. *Class of General Unsecured Claims*

General unsecured claims are not secured by property of the estate and are not entitled to priority under §507(a) of the Code. The following chart identifies the Plan's proposed treatment of Class 3 which contains general unsecured claims against the Debtor:

| Class 3 - General Unsecured Creditors<br><br>Ben Tipton $150,000<br><br>Dougal MacDonald $250,000 | Impaired | These creditors will be paid their pro-rata share of $3,000/month for 60 months. Any amounts outstanding at the end of that period will be paid in full. |
|---|---|---|

4. *Class of Equity Interest Holders*

Equity interest holders are parties who hold an ownership interest (i.e. equity interest) in the Debtor. In a corporation, entities holding preferred or common stock are equity interest holders. In a partnership, equity interest holders include both general and

Debtor's Disclosure Statement Dated - 9

Case: 10-70345   Doc# 73   Filed: 03/15/11   Entered: 03/15/11 19:53:36   Page 9 of 17

limited partners. In a limited liability company ("LLC"), the equity interest holders are the members.

The Debtor is a limited liability company. Its members are David T. Fowler (83%), Robert Milano (5%) and Rodney Booth (12%). These creditors are impaired under the plan. They will receive no payments or dividends on account of these claims until all other creditors have been paid in full.

D. **Means of Implementing the Plan**

1. *Source of Payments; Establishment of Plan Fund*

The Debtor will borrow the approximate sum of $4,000,000 which will be secured by a first priority lien on both the 29.9 Acre Parcel and the 131 Acre Parcel. The loan proceeds will be used to pay the Class 1 Secured Claim in full. Approximately $1,000,000 will be paid to the Class 2 Secured Claim, whose lien will be subordinated to the new loan. The remainder of the loan proceeds will be used as reserves for two years' interest payments on the new loan, for the Debtor's post-confirmation operating expenses (permits, licenses, etc.), and for contingencies. Delterra will pay monthly lease payments of $66,000. From those payments, the Debtor will make interest payments to the Claim 2 creditor for a period of five years, after which time the loan will be fully due and payable. From the monthly lease payments, the Class 3 unsecured creditors will receive their pro-rata share of approximately $3,000/month for a period of five years, after which time Class 3 creditors will also be paid in full. Class 4 claimants will receive nothing on account of their claims or interests until after all Class 1, 2 and 3 creditors have been paid in full.

2. *Post Confirmation Management*

David Fowler will remain the manager of the Debtor, who will serve without compensation.

E. **Risk Factors**

The proposed Plan has the following risks: The major risk factor of the Debtor not making the payments would be that Delterra would lose its funding and would be unable to make its lease payments to the Debtor. Delterra will provide proof of funds on hand prior

to the hearing on approval of this Disclosure Statement. The reserves from the loan being made to the Debtor include a reserve for one year of Plan payments and two years of interest payments on the new loan.

F. **Executory Contracts and Unexpired Leases**

Article VI of the Plan lists all executory contracts and unexpired leases that the Debtor will assume under the Plan. Assumption means that the Debtor has elected to continue to perform the obligations under such contracts and unexpired leases, and to cure defaults of the type that must be cured under the Code, if any. The Debtor intends to assume its ground lease with Delterra, which is not in default.

If you object to the assumption of your lease or executory contract, the proposed cure of any defaults, or the adequacy of assurance of performance, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan, unless the Court has set an earlier time.

All executory contracts and unexpired leases that are not listed in The Plan will be rejected under the Plan. Consult your adviser or attorney for more specific information about particular contracts or leases.

If you object to the rejection of your contract or lease, you must file and serve your objection to the Plan within the deadline for objecting to the confirmation of the Plan.

G. **Tax Consequences of the Plan**

*Creditors and Equity Interest Holders concerned with how the plan may affect their tax liability should consult with their own accountants, attorneys and/or advisors.*

The only known tax consequence to creditors under this plan, is that the payments may constitute income on which taxes will have to be paid. The Debtor does not believe there are any adverse tax consequences of this Plan for the Debtor.

IV. **CONFIRMATION REQUIREMENTS AND PROCEDURES**

To be confirmable, the Plan must meet the requirements listed in §§ 1129(a) or (b) of the Code. These include the requirements that: the Plan must be proposed in good faith;

Debtor's Disclosure Statement
Dated

- 11

at least one impaired class of claims must accept the plan, without counting votes of insiders; the Plan must distribute to each creditor and equity interest holder at least as much as the creditor or equity interest holder would receive in a chapter 7 liquidation case, unless the creditor or equity interest holder votes to accept the Plan; and the Plan must be feasible. These requirements are <u>not</u> the only requirements listed in § 1129, and they are not the only requirements for confirmation.

A. **Who May Vote or Object**?

Any party in interest may object to the confirmation of the Plan if the party believes that the requirements for confirmation are not met.

Many parties in interest, however, are not entitled to vote to accept or reject the Plan. A creditor or equity interest holder has a right to vote for or against the Plan only if that creditor or equity interest holder has a claim or equity interest that is both (1) allowed or allowed for voting purposes and (2) impaired.

In this case, the Plan Proponent believes that classes 2b, 3 and 4 are impaired and that holders of claims in each of these classes are therefore entitled to vote to accept or reject the Plan. The Plan Proponent believes that class 2a is unimpaired and that holders of claims in each of this class, therefore, does not have the right to vote to accept or reject the Plan.

**B. Who is NOT Entitled to Vote**?

The holders of the following five types of claims and equity interests are NOT entitled to vote:

- holders of claims and equity interests that have been disallowed by an order of the Court;

- holders of other claims or equity interests that are not "allowed claims" or "allowed equity interests" (as discussed above), unless they have been "allowed" for voting purposes.

- holders of claims or equity interests in unimpaired classes;

- holders of claims entitled to priority pursuant to §§ 507(a)(2), (a)(3), and (a)(8) of the Code; and

- holders of claims or equity interests in classes that do not receive or retain any value under the Plan;

- administrative expenses.

***Even if you are not entitled to Vote on the Plan, You have the Right to Object to the Confirmation of the Plan.***

**C. Votes Necessary to Confirm the Plan**

If impaired classes exist, the Court cannot confirm the Plan unless (1) at least one impaired class of creditors has accepted the Plan without counting the votes of any insiders within that class, and (2) all impaired classes have voted to accept the Plan, unless the Plan is eligible to be confirmed by "cram down" on non-accepting classes, as discussed in section C.2. below.

*1. Votes Necessary for a Class to Accept the Plan*

A class of claims accepts the Plan if both of the following occur: (1) the holders of more than one-half (1/2) of the allowed claims in the class, who vote, cast their votes to accept the Plan, and (2) the holders of at least two-thirds (2/3) in dollar amount of the allowed claims in the class, who vote, cast their votes to accept the Plan.

A class of equity interests accepts the Plan if the holders of at least two-thirds (2/3) in amount of the allowed equity interests in the class, who vote, cast their votes to accept the Plan.

*2. Treatment of Nonaccepting Classes*

Even if one or more impaired classes reject the Plan, the Court may nonetheless confirm the Plan if the nonaccepting classes are treated in the manner prescribed by § 1129(b) of the Code. A plan that binds nonaccepting classes is commonly referred to as a "cram down" plan. The Code allows the Plan to bind nonaccepting classes of claims or equity interests if it meets all the requirements for consensual confirmation except the

Debtor's Disclosure Statement
Dated
- 13 -

Case: 10-70345   Doc# 73   Filed: 03/15/11   Entered: 03/15/11 19:53:36   Page 13 of 17

voting requirements of § 1129(a)(8) of the Code, does not "discriminate unfairly," and is "fair and equitable" toward each impaired class that has not voted to accept the Plan.

*You should consult your own attorney if a cramdown at confirmation will affect your claim or equity interest, as the variations on this general rule are numerous and complex.*

D. **Liquidation Analysis**

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive under a Chapter 7 liquidation. A liquidation analysis is attached to this Disclosure Statement as Exhibit D.

D. **Feasibility**

The Court must find that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization, of the Debtor or any successor to the Debtor, unless such liquidation or reorganization is proposed in the Plan.

1. *Ability to Initially Fund Plan*

The Debtor believes it will have enough cash on hand on the Effective Date of the Plan to pay all of the claims and expenses that are entitled to be paid on that date. The Debtor's Plan proposes an initial loan of $4,000,000 cash. The details of the financing are set forth in Exhibit E. $2,000,000 of the cash will be used to pay secured creditors (pay off ACM and pay down CCIF). The remaining amount will be used as a reserve for the first year of Plan Payments (including payments of administrative expense claims and post-confirmation US Trustee fees), and a reserve for the first two years of interest on the new loan, as well as funds for initial operating expenses.

2. *Ability to Make Future Plan Payments and Operate Without Further Reorganization*

The Debtor must also show that it will have enough cash over the life of the Plan to make the required Plan payments. The Debtor's projected financial information is listed in Exhibit F. These projections show that the income will be more than sufficient to pay not

Debtor's Disclosure Statement
Dated - 14

only the debtor's operating expenses, but also all payments due under the Plan. At the end of the five years, with the business ventures in full operation, the property value is anticipated to increase and the Debtor's finances will have improved to the point where the Debtor will be able to refinance the property to pay in full the existing loans against it.

## V. EFFECT OF CONFIRMATION OF PLAN

### A. Discharge of Debtor

On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

### B. Modification of the Plan

The Plan Proponent may modify the Plan at any time before confirmation of the Plan. However, the Court may require a new disclosure statement and/or revoting on the Plan. The Plan Proponent may also seek to modify the Plan at any time after confirmation only if (1) the Plan has not been substantially consummated *and* (2) the Court authorizes the proposed modifications after notice and a hearing."

### C. Final Decree

Once the estate has been fully administered, as provided in Rul3 3022 of the Federal Rules of Bankruptcy Procedure, the Debtor, or such other party as the Court shall designate in the Plan Confirmation Order, shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## VI. REMEDIES FOR FAILURE TO COMPLY WITH PLAN

Should the Debtor fail to comply with the terms of this Plan, creditors shall have all their rights and remedies as provided by the Bankruptcy Code, including, but not limited

Debtor's Disclosure Statement
Dated - 15

to, the filing of a motion for conversion of the case to Chapter 7 or the appointment of a Trustee. The Chapter 11 case shall remain open until the plan has been substantially consummated and all post-confirmation Court activity in contemplation is concluded.

## VII. RETENTION OF JURISDICTION

Notwithstanding confirmation of the Plan, the revestment of property of the estate in the Debtor, the Court shall retain jurisdiction for the following purposes only:

A. The determination of the allowability of claims, including professionals' fees, upon objection or motion regarding such claims by the Debtor or any interested party;

B. The determination of requests for payments of claims entitled to priority under §507(a) of the Code, including compensation of parties entitled thereto;

C. The resolution of any disputes regarding interpretation of the Plan, the enforcement of the Plan, any defaults under the Plan, including any request for conversion of this case to a Chapter 7 case;

D. The implementation of the provisions of the Plan, the entry of orders in aid of consummation of the Plan, including, without limitation, appropriate orders to protect the revested Debtor from creditor's actions;

E. Modification of the Plan pursuant to §1127 of the Code;

F. Entry of an order approving and confirming the Plan;

G. Entry of a final decree and all orders appropriate thereto.

## VIII. CONCLUSION

The Debtor respectfully requests that the Creditors give favorable consideration to the Debtor's Plan of Reorganization.

EAST BAY ASSOCIATES, LLC


By:__/s/ David Fowler_____
DAVID FOWLER, Responsible Individual